**BULL ATTORNEYS, P.A.**
10111 E. 21st Street North, Suite 204
Wichita, Kansas 67206
Ph: 316-684-4400 / Fax: 316-684-4405

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS
### AT KANSAS CITY, KANSAS

N.R., a minor, by and through
her mother, next friend and legal
guardian, MARIE FREIRE,

    Plaintiffs,

-vs-                                                Case No.

THE VILLAS AT EMPORIA, LLC,
A foreign Limited Liability Company,

    Defendant.
_____

### COMPLAINT

COMES NOW Plaintiffs, by and through counsel, Tony L. Atterbury and Jay Sizemore of Bull Attorneys, P.A. and for their claim against Defendant, alleges and states:

### IDENTITIES OF THE PARTIES

1. Plaintiffs are residents of Lyon County, Kansas. Marie Freire is the mother, next friend, and legal guardian of N.R, a minor and brings this Complaint on behalf of her minor daughter.

2. Defendant, The Villas at Emporia, LLC (The Villas) is a foreign Limited Liability Company with a principal place of business located at 111 Perry Street, Suite 300, Davenport, Iowa 52801 and may be served with process through Patrick Sherman at 111 Perry Street, Suite 300, Davenport, Iowa 52801. Upon information and belief, based upon the Certificate Validation provided by the Iowa Secretary of State's Office filed on December 5, 2008, with the Kansas Secretary of State's office, all members of the foreign LLC are residents and citizens of

1

Bettendorf, Iowa and no member of the LLC is a resident or citizen of the State of Kansas. The Certificate identifies Ben Eastep, Phillip Eastep, Pat Sherman, and Tim Baldwin as the four members and/or managers of the foreign LLC and they are citizens and reside in the city of Bettendorf, Scott County, Iowa.

## JURISDICTION AND VENUE

3. This Court has proper venue and jurisdiction over the persons and subject matter.

4. This action is brought pursuant to 28 U.S.C. Section 1332(a) on the basis of diversity of citizenship. The matter is in excess of the sum of Seventy-Five Thousand and no/100 Dollars ($75,000.00) exclusive of interest and costs.

## GENERAL ALLEGATIONS OF FACTS

5. Zach Dortch is the owner of a Rottweiler named "Duke" who has now been euthanized. Zach Dortch was a resident and tenant of an apartment complex in Emporia, Kansas called The Villas at Emporia.

6. The Rottweiler named Duke resided at The Villas with its owner prior to the time of the dog bite.

7. N.R, a minor, was attacked and bitten by Duke on or about 6-8-22.

8. At the time of the attack N.R., a minor, was approximately ten years old and was a resident of The Villas with her mother.

9. Duke, the Rottweiler, was being walked by an unknown female in the apartment complex common areas and was either taking Duke out of the apartment building or into the apartment building.

10. Surveillance video provides clear and convincing video evidence of the N.R. being attacked and bitten by the Rottweiler.

11. The bite and attack were so extreme that it shows the Rottweiler thrashing the ten-year-old minor around on the floor while the dog's jaws clamped down on her right arm. The bite went deep through the skin, flesh, muscle, and fascia causing a huge approximately 8.5 to 10 cm hole in N.R.'s right arm which caused a complex stellate injury of the right upper third forearm. The dog's teeth tore into the brachial radialis muscle belly and damaged nerves, tendons and ligaments as well as muscles and the minor has permanent nerve damage causing problems with use of the right hand where the thumb is numb and she has difficulty contracting the hand to squeeze. The injuries are a direct and proximate result of the negligence of the Defendant, The Villas.

12. The screenshot attached as **Exhibit A** is from the actual surveillance video and illustrates the severe nature of the bite and attack by this vicious Rottweiler. It provides evidence of a female adult at the entrance to a common elevator entrance used by tenants and visitors of the apartment complex. As the elevator door opens, the ten-year-old girl, N.R. starts to exit the elevator when the Rottweiler, who is stronger than the female adult holding it on a leash, jumps onto N.R. and grabs her right arm pulling her to the ground.

13. A screenshot of the injury after repair is attached as **Exhibit B**.

14. A photo of the horrific scars following the surgical repair is attached as **Exhibit C**.

15. Duke the Rottweiler attacked and bit another person at The Villas approximately one to two weeks before the attack and bite on N.R. on June 8, 2022.

16. Detective Peter Najim took a recorded statement of Zach Dortch on June 14th, 2022. A copy of the transcript of that statement is attached as **Exhibit D**. The transcribed statement provides clear and convincing evidence that the Rottweiler had bitten another human before the attack and bite on N.R, a minor.

17. After the first attack by Duke, the management of The Villas learned about the attack and bite of a human being and recklessly and wantonly allowed the tenant, Zach Dortch, to bring the vicious Rottweiler back to the apartment complex after having actual knowledge of the vicious animal's unprovoked attack on another human being where it bit a female.

18. Detective Peter Najim conducted a recorded statement and interview of Kelsie Smith, an assistant manager at The Villas on June 14, 2022, about the subject occurrence. A copy of the transcript is attached as **Exhibit E**. Ms. Smith informed the detective that a week before the accident that hurt N.R, Duke had become "too rough" and bit one of Zach Dortch's friends and she received "stitches" from the bite. She informed Mr. Najim that the dog was then quarantined and when he came back, he "bit the little girl." She additionally admitted that The Villas had policies on dogs who bite people, but Duke was "able to come back after he was quarantined."

19. The Villas management had actual knowledge and clear and concise knowledge of Duke attacking the first human before allowing Mr. Dortch to bring back Duke to the apartment complex after quarantine which is evidenced from Ms. Smith's statement and Mr. Dortch's statement.

20. Despite having actual knowledge that Duke was an imminent threat to adults and children as well as visitors at the apartment complex which would obviously include young children who are defenseless and much smaller than the enormous Rottweiler, The Villas management allowed the vicious animal to return where it could cause harm, attack, and or bite other people or children at the apartment complex. The Villas management should not have allowed the dog to return and to do so was negligent, reckless, wanton and in gross disregard to human safety and life and violates industry standards of care within the apartment complex industry and the

landlord rental industry.

21. Upon information and belief, the decision to allow the vicious animal to return negligently, recklessly, and wantonly violated the management policies of The Villas about not allowing dangerous or vicious animals to be harbored in the apartment complex by tenants. See **Exhibit E**, the statement of Kelsie Smith, Assistant Manager at The Villas.

22. The management of The Villas not only knew or should have known of the vicious propensities of Duke to attack humans, but it also had actual notice of the imminent danger the vicious Rottweiler posed to tenants, adults, children, and visitors at the apartment complex including, but not limited to Plaintiffs, Maria Freire and her daughter, N.R, a minor.

23. The management of The Villas not only should have prevented the dog from coming back to The Villas where it could be harbored by tenant Zach Dortch and bite another human but additionally failed to warn or notify tenants, residents, children and visitors at the apartment complex. Allowing the vicious animal to return while additionally not warning tenants, residents, children and visitors at The Villas was negligent, reckless and wanton. The Villas could have easily sent out written or email notices to the tenants and residents of The Villas so that apartment residents could protect themselves and especially their children from being attacked by Duke and these actions and omissions of The Villas proximately caused injuries and damages to N.R.

24. The attack and bite on N.R. was 100% preventable by the management of The Villas who negligently, recklessly and wantonly made a decision to ignore their management policies about not allowing vicious animals on the premises in the common areas of the premises like the elevators and hallways and by their decision to allow the vicious animal to return to the apartment complex where it would be harbored by tenant, Zach Dortch. The decision of The

Villas management not to warn the residents of the dog's return to the apartment complex after biting a female adult human being proximately caused injuries and damages to N.R.

25. The City of Emporia, Lyons County, Kansas has enacted a municipal code regarding "Vicious Animals" which requires vicious animals not to be harbored and if the vicious animal has bit one person before and bites another person requires that the vicious animal be killed. A copy of the Municipal Ordinance is attached as **Exhibit F**.

26. The Rottweiler was so vicious that the dog was euthanized by the City of Emporia after the attack, N.R. The Emporia Municipal Court *Case Information* under Case # 22MC00980 against Zachary Dortch is attached as **Exhibit G**. The Court found Mr. Dortch guilty of violation of Emporia Municipal Code Section 6-6 on harboring Vicious Animals and ordered Duke to be euthanized.

27. N.R. will always be disfigured and disabled with horrific scarring as evidenced by the photos above. She will be disabled with the numbness in her thumb and loss of function to the right hand. She will remain terrified of dogs and will continue with her PTSD of having recurring nightmares about this startling and unprovoked attack.

## COUNT I – NEGLIGENCE AND WANTON CONDUCT.

28. Plaintiffs incorporate by reference all preceding allegations in this Complaint, as if they were repeated herein.

29. The allegations contained in this Complaint regarding the Kansas Residential Landlord-Tenant Act violations are set forth to establish that the Defendant did not comply with the industry standard of care for apartment complexes with common areas in order to establish the standard of care for negligence and/or wanton conduct and the allegations are not brought to allege a private cause of action for violation of this Act.

30. The dog, Duke, was a vicious animal and not only had vicious propensities, but it was also actually vicious and had bitten an adult female approximately one-two weeks before the attack and bite on N.R. on June 8, 2022.

31. Both the owner of the dog, Zach Dortch, and The Villas management were aware of the prior bite to and adult female human being which required stitches as a result of the bite.

32. The Kansas Residential Landlord-Tenant Act statutorily imposes duties upon the Landlord under K.S.A. 58-2553(a)(2) imposes duties upon the landlord which requires that the landlord, "exercise reasonable care in the maintenance of the common areas." This dog bite and attack occurred in the common area between an elevator and hallway. Once The Villas had actual knowledge of the first bite and attack of Duke on a female adult human being and the subsequent quarantine with Duke, it acted negligently, recklessly and wantonly when it breached its duty to exercise reasonable care in the maintenance of the common areas by all allegations contained within Count I which proximately caused injuries and damages to N.R., a minor.

33. The Landlord Tenant Act in K.S.A. 58-2553 (a)(1), (2), and (3) impose three duties upon all residential landlords in Kansas. Those duties are:

    1. Comply with the requirements of applicable building and housing codes materially affecting health and safety.
    2. Exercise reasonable care in maintenance of the common areas.
    3. Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air-conditioning appliances including elevators supplied or required to be supplied by such landlord. See *Jackson v. Wood,* 11 Kan. App. 2d at 481, 726 P.2d 796 (Ks. Ct. App. 1986); quoted approvingly in

*O'Neill v. Dunham,* 41 Kan. App. 2d 540, 541 (Ks. Ct. App. 2009).

34. The Kansas Supreme Court recognizes six exceptions to the common-law rule of tenant liability and landlord nonliability arising from a defective condition existing at the time of the lease. They are:

   1. Undisclosed dangerous conditions known to lessor and unknown to lessee.

   2. Conditions dangerous to persons outside of the premises.

   3. Premises leased for admission of the public.

   4. Parts of land retained in lessor's control which lessee is entitled to use.

   5. Where lessor contracts to repair.

   6. Negligence by lessor in making repairs.

*Borders v. Roseberry,* 216 Kan. 486, 489, 532 P.2d 1366 (1975); *O'Neill v. Dunham,* 41 Kan. App. 2d 540, 549-550, 203 P.3d 68, (Ct. App. Kan. 2009).

35. The Villas management and the dog owner, Zach Dortch, both knew the dog was placed into quarantine as a result of the prior dog bite. Despite this actual knowledge, The Villas management negligently, recklessly, and wantonly allowed Zach Dortch to return the vicious animal back to the apartment building where resident Dortch could continue to harbor the vicious animal.

36. The Villas management had policies in place at the apartment complex that were intended to prevent tenants like Zach Dortch from harboring a vicious animal at the apartment complex but negligently, recklessly and wantonly failed to follow their procedures regarding vicious animals.

37. The Villas management had knowledge of Duke's violent temperament but negligently, recklessly, and wantonly, chose to continue to lease to the owner, Zach Dortch, and allow

Duke to return to the apartment complex after having actual knowledge that Duke bit an adult female human being at the apartment complex.

38. The Villas management had intimate knowledge of the dog's prior attack and bite actions but negligently, recklessly, and wantonly chose to allow Duke to come back to The Villas after the first attack and bite on an adult female human and underwent quarantine.

39. The Villas management had the legal power to evict Zach Dortch and Duke the Rottweiler after the first attack, bite and quarantine but negligently, recklessly, and wantonly failed to terminate the lease and to disallow the dog and its owner from returning to the apartment complex after the first attack and bite and quarantine.

40. After the dog, Duke, bit the first adult female human and was quarantined, the management of The Villas knew or reasonably should have known and had actual knowledge that it was foreseeable that the large Rottweiler who had previously attacked a female adult human being could attack a tenant, resident, a child or a visitor at The Villas. The statement given by assistant manager, Kelsie Smith, provides evidence of the actual knowledge of the prior dog bite and attack of Duke to a person at their apartment complex.

41. The Villas management acted negligently, recklessly, and wantonly disregarded their own policies that were intended to protect tenants, residents, children, and visitors at The Villas from being attacked or bitten by vicious animals and dogs who were owned by tenants and residents of The Villas apartment complex.

42. The Villas management, after knowing of the prior dog bite of Duke of the female adult human being negligently, recklessly, and wantonly failed to warn and notify the tenants and residents of The Villas that the dog had previously bitten an adult human being and could pose a direct threat and danger to the tenants, residents, children, and visitors at the

apartment complex so that parents who were tenants and residents could properly advise their children of the need to stay away and avoid Duke.

43. The normal nonliability of landlords has several exceptions as discussed in preceding paragraphs. One of the exceptions is exception one (1) when there are dangerous conditions known to the lessor and unknown to the lessee. In this case, The Villas management is the lessor and the management had actual knowledge of the dangerous characteristics and propensities of Duke; they knew and had actual knowledge of the prior bite of the adult female human being by Duke; they had actual knowledge and knew of the quarantine of Duke because of the prior bite as required under Section 6-6 of the Emporia Municipal Code on "vicious animals"; despite this actual knowledge they negligently, recklessly, and wantonly failed to warn the tenants, residents, children and visitors including, but not limited to the Plaintiffs in this case; The Villas management knew or reasonably should have known that the Plaintiffs and other tenants, children, and visitors were unaware of the prior bite or of Duke's quarantine and they knew they violated their own policies on not allowing vicious animals to be harbored by tenants and residents at the apartment complex which proximately caused the injuries and damages to N.R. to such an extent that this exception applies to make the landlord, The Villas, liable for the injuries and damages of N.R., a minor.

44. Exception number four (4) to nonliability of landlords is when parts of the land are retained in the lessor's control which the lessee is entitled to use. This exception is applicable to the present case. The attack to N.R. occurred in the part of the apartment complex which is considered a "common area", and which occurred at the hallway and the adjoining elevator when the dog was getting ready to enter the elevator from the hallway (both common areas)

and the children, including, N.R. were exiting the elevator into the hallway. N.R. and her mother were lessees and were entitled to use the common areas of the elevator and hallway. The Villas negligently, recklessly, and wantonly failed to warn the lessee including N.R. and her mother, of the extreme danger and failed to prevent the vicious animal from returning to the common areas after having actual knowledge of the prior attack on a female adult human being and had actual knowledge of the quarantine of Duke. These actions and omissions of The Villas in the common area proximately caused injuries and damages to N.R, a minor.

45. The actions and/or omissions of Defendant are additionally negligent, reckless and wanton for the following reasons:

   A. Failure to exercise reasonable care in the maintenance of the common areas by allowing the vicious animal to return to The Villas after the first bite and attack and by failing to post warnings throughout the hallways and elevators to warn the tenants, residents, children, and visitors to beware going near Duke the Rottweiler.

   B. Failure to warn.

   C. Failure to exercise ordinary and reasonable care.

   D. By failing to disclose their actual knowledge that Duke was vicious and had bitten another adult human being at the apartment complex approximately one-two weeks before the minor Plaintiff was attacked and bitten.

   E. By failing to disclose dangerous conditions regarding actual knowledge that Duke had bitten one person at the apartment complex which only The Villas management and Zach Dortch knew about to prevent injury to other tenants, residents, children and visitors with the understanding that the dangerous

       condition is allowing Duke to return to the apartment complex after the first attack and bite while keeping the attack secret and hidden from all the other tenants, residents, children and visitors at the apartment complex.

    F.    By allowing Zach Dortch and Duke to return to the apartment complex after the first bite and attack.

    G.    By failing to implement and follow appropriate risk management and preventability procedures to prevent tenants and residents from harboring vicious animals at the apartment complex.

    H.    Had the legal power to evict the tenant and resident Jack Dortch or his dog, Duke the Rottweiler and chose not to evict either allowing them both to return to the apartment complex after the first bite and attack.

    I.    By failing to implement and follow appropriate risk management and preventability procedures to prevent tenants and residents from harboring vicious animals at the apartment complex.

    J.    Other actions and omissions which will be supplemented after discovery is complete.

46. As a direct and proximate result of the negligent, reckless, and wanton conduct of Defendant, as aforesaid, plaintiff N.R., a minor, has received serious permanent and disabling and disfiguring injuries to her body, including, but not limited to: bites with lacerations and puncture wounds to her right forearm requiring significant surgeries, serious and life threatening infections resulting from her wounds; developed substantial scarring and disfigurement; has a large flapped laceration that created a deep defect that was at least 8.5-10 cm in length; had to undergo a repair to the brachial radialis muscle belly; had to undergo

repair to the ECRL tendon and muscle belly; has a complex stellate injury of the right upper third forearm; now has chronic hand and forearm pain with neuropathic pain; has a numb right thumb; has difficulty with grasping and closing her right hand; has nerve and arterial damage; may have had aggravation to a pre-existing condition, and was otherwise injured. Plaintiff N.R. has been damaged with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, PTSD, and permanent disability. In the future she will suffer with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, permanent PTSD, and permanent disability. For the aforementioned damages, Plaintiff, has been damaged in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

### COUNT II - RATIFICATION IS ESTABLISHED BY EXPRESS OR IMPLIED RATIFICATION

47. Plaintiffs incorporate by reference all preceding allegations in this Complaint, as if they were repeated herein.

48. Defendant has ratified all conduct of Assistant Manager Kelsie Smith and her Manager (name unknown) either expressly or impliedly. Upon information and belief, neither the manager at The Villas or the assistant manager, Kelsey Smith, were reprimanded, suspended, terminated, or retrained following the subject first bite to the adult female human or after the second attack and bite to N.R. Additionally, after learning of the first bite by Duke, The Villas local management and corporate management above them were aware that Duke bit a female adult human being and were aware that the dog went into quarantine and allowed the tenant, Zach Dortch to continue in a rental lease where he harbored the vicious animals when they knew or reasonably should have known the apartment policies on not

allowing vicious animals to be harbored by tenants or residents was being violated and it was apparently more important to continue to receive lease monies from Zach Dortch rather than terminate the lease. Additionally, upon information and belief, after the second bite and attack to N.R., The Villas continued to allow Zach Dortch to reside at The Villas. Ratification is further established by the failure of The Villas to warn any tenants or residents of the vicious animal following the first bite.

49. The Defendant and its management and upper management apparently turned a blind eye to safety of the tenants, residents, children, and visitors at The Villas.

## COUNT III - PUNITIVE DAMAGE CLAIMS

50. Plaintiffs incorporate by reference all preceding allegations in this Complaint, as if they were repeated herein.

51. The nature of the wanton actions and/or omissions of the Defendant described in all allegations set forth above are wanton, grossly negligent, and recklessly indifferent to human life. The evidence to date proves that there is clear and convincing evidence of wanton conduct. For the aforementioned damages, the Plaintiffs have been damaged and seek punitive damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

WHEREFORE, Plaintiffs pray for judgment against Defendant, in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), for punitive damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), prejudgment and post-judgment interest where allowed by law, for costs herein, and for such other and further relief as the Court deems just and equitable.

                                      **BULL ATTORNEYS, P.A.**

                                      /s/ Tony L. Atterbury
                                      Tony L. Atterbury, #20314
                                      /s/ Jay Sizemore
                                      Jay Sizemore, #20395
                                      10111 E. 21st Street North, Suite 204
                                      Wichita, KS 67206
                                      316-684-4400, Fax: 316-684-4405
                                      tony@bullattorneys.com
                                      jay@bullattorneys.com
                                      *Attorneys for Plaintiffs*

## **DEMAND FOR PRETRIAL CONFERENCE AND JURY TRIAL**

Plaintiffs demands a pretrial conference and a trial by jury in this matter.

## **DESIGNATION FOR PLACE OF TRIAL**

Plaintiffs designate Kansas City, Kansas as the place for trial in this matter.

                                      /s/ Tony L. Atterbury
                                      Tony L. Atterbury, #20314
                                      /s/ Jay Sizemore
                                      Jay Sizemore, #20395